UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | |
|---|---|
| DAVID H[1]., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 2:21-cv-00143-DLP-JRS |
| | ) |
| KILOLO KIJAKAZI, | ) |
| | ) |
| Defendant. | ) |

### ORDER

Plaintiff David H. requests judicial review of the denial by the Commissioner of the Social Security Administration ("Commissioner") of his application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act. *See* 42 U.S.C. § 405(g). For the reasons set forth below, the Court hereby **REVERSES** the ALJ's decision denying the Plaintiff benefits and **REMANDS** this matter for further consideration.

### I.   PROCEDURAL HISTORY

On May 30, 2019, David protectively filed his application for Title II DIB. (Dkt. 14-2 at 22, R. 21). David initially alleged disability resulting from a left knee replacement, hypothyroidism, and hypertension. (Dkt. 14-6 at 6, R. 181). The Social Security Administration ("SSA") denied David's claim initially on September 9,

---

[1] In an effort to protect the privacy interests of claimants for Social Security benefits, the Southern District of Indiana has adopted the recommendations put forth by the Court Administration and Case Management Committee of the Administrative Office of the United States Courts regarding the practice of using only the first name and last initial of any non-government parties in Social Security opinions. The Undersigned has elected to implement that practice in this Order.

1

2019, (Dkt. 14-3 at 14, R. 66), and on reconsideration on December 19, 2019. (Id. at 25, R. 77). On January 28, 2020, David filed a request for a hearing, which was granted. (Dkt. 14-4 at 23, R. 99).

On September 28, 2020, Administrative Law Judge ("ALJ") Peter Beekman conducted a telephone hearing from Cleveland, Ohio, due to the coronavirus pandemic, with David, his counsel, and vocational expert George Parsons. (Dkt. 14-2 at 38, R. 37). On October 27, 2020, ALJ Beekman issued an unfavorable decision finding that David was not disabled. (Id. at 22-31, R. 21-30). David requested review of the ALJ's decision. (Dkt. 14-4 at 78-80, R. 154-56). On January 13, 2021, the Appeals Council denied David's request for review, making the ALJ's decision final. (Dkt. 14-2 at 2, R. 1). David now seeks judicial review of the ALJ's decision denying benefits pursuant to 42 U.S.C. § 405(g).

## II.  STANDARD OF REVIEW

To qualify for disability, a claimant must be disabled within the meaning of the Social Security Act. To prove disability, a claimant must show he is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). To meet this definition, a claimant's impairments must be of such severity that he is not able to perform the work he previously engaged in and, based on his age, education, and work experience, he cannot engage in any other kind of substantial gainful work that exists in significant numbers in

the national economy. 42 U.S.C. § 423(d)(2)(A). The SSA has implemented these statutory standards by, in part, prescribing a five-step sequential evaluation process for determining disability. 20 C.F.R. § 404.1520(a). The ALJ must consider whether:

> (1) the claimant is presently [un]employed; (2) the claimant has a severe impairment or combination of impairments; (3) the claimant's impairment meets or equals any impairment listed in the regulations as being so severe as to preclude substantial gainful activity; (4) the claimant's residual functional capacity leaves him unable to perform his past relevant work; and (5) the claimant is unable to perform any other work existing in significant numbers in the national economy.

*Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351-52 (7th Cir. 2005) (citation omitted). An affirmative answer to each step leads either to the next step or, at steps three and five, to a finding that the claimant is disabled. 20 C.F.R. § 404.1520; *Briscoe*, 425 F.3d at 352. If a claimant satisfies steps one and two, but not three, then he must satisfy step four. Once step four is satisfied, the burden shifts to the SSA to establish that the claimant is capable of performing work in the national economy. *Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995); *see also* 20 C.F.R. § 404.1520. (A negative answer at any point, other than step three and five, terminates the inquiry and leads to a determination that the claimant is not disabled.).

After step three, but before step four, the ALJ must determine a claimant's residual functional capacity ("RFC") by evaluating "all limitations that arise from medically determinable impairments, even those that are not severe." *Villano v. Astrue*, 556 F.3d 558, 563 (7th Cir. 2009). The RFC is an assessment of what a claimant can do despite his limitations. *Young v. Barnhart*, 362 F.3d 995, 1000-01

(7th Cir. 2004). In making this assessment, the ALJ must consider all the relevant evidence in the record. *Id.* at 1001. The ALJ uses the RFC at step four to determine whether the claimant can perform his own past relevant work and if not, at step five to determine whether the claimant can perform other work in the national economy. *See* 20 C.F.R. § 404.1520(a)(4)(iv)-(v).

The claimant bears the burden of proof through step four. *Briscoe*, 425 F.3d at 352. If the first four steps are met, the burden shifts to the Commissioner at step five. *Id.* The Commissioner must then establish that the claimant – in light of his age, education, job experience, and residual functional capacity to work – is capable of performing other work and that such work exists in the national economy. 42 U.S.C. § 423(d)(2); 20 C.F.R. § 404.1520(f).

Judicial review of the Commissioner's denial of benefits is to determine whether it was supported by substantial evidence or is the result of an error of law. *Dixon v. Massanari,* 270 F.3d 1171, 1176 (7th Cir. 2001). This review is limited to determining whether the ALJ's decision adequately discusses the issues and is based on substantial evidence. Substantial evidence "means – and means only – such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill,* 139 S.Ct. 1148, 1154 (2019); *Rice v. Barnhart*, 384 F.3d 363, 369 (7th Cir. 2004). The standard demands more than a scintilla of evidentiary support but does not demand a preponderance of the evidence. *Wood v. Thompson,* 246 F.3d 1026, 1029 (7th Cir. 2001). Thus, the issue before the Court is

not whether David is disabled, but, rather, whether the ALJ's findings were supported by substantial evidence. *Diaz v. Chater*, 55 F.3d 300, 306 (7th Cir. 1995).

Under this administrative law substantial evidence standard, the Court reviews the ALJ's decision to determine if there is a logical and accurate bridge between the evidence and the conclusion. *Roddy v. Astrue*, 705 F.3d 631, 636 (7th Cir. 2013) (citing *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008)). In this substantial evidence determination, the Court must consider the entire administrative record but not "reweigh evidence, resolve conflicts, decide questions of credibility, or substitute its own judgment for that of the Commissioner." *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000), *as amended* (Dec. 13, 2000). Nevertheless, the Court must conduct a critical review of the evidence before affirming the Commissioner's decision, and the decision cannot stand if it lacks evidentiary support or an adequate discussion of the issues. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003); *see also Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002).

When an ALJ denies benefits, he must build an "accurate and logical bridge from the evidence to his conclusion," *Clifford*, 227 F.3d at 872, articulating a minimal, but legitimate, justification for the decision to accept or reject specific evidence of a disability. *Scheck v. Barnhart,* 357 F.3d 697, 700 (7th Cir. 2004). The ALJ need not address every piece of evidence in his decision, but he cannot ignore a line of evidence that undermines the conclusions he made, and he must trace the

path of his reasoning and connect the evidence to his findings and conclusions. *Arnett v. Astrue,* 676 F.3d 586, 592 (7th Cir. 2012); *Clifford*, 227 F.3d at 872.

### III.   BACKGROUND

#### A. Factual Background

David was 58 years old as of his alleged onset date of April 18, 2019. (Dkt. 14-5 at 2, R. 157). He has earned a GED. (Dkt. 14-2 at 39, R. 38). He has past relevant work history as a flagger, forklift operator, and crane operator. (Dkt. 14-2 at 30, R. 29).

#### B. ALJ Decision

In determining whether David qualified for benefits under the Act, the ALJ employed the five-step sequential evaluation process set forth in 20 C.F.R. § 404.1520(a) and concluded that David was not disabled. (Dkt. 14-2 at 22-31, R. 21-30). At Step One, the ALJ found that David had not engaged in substantial gainful activity since the alleged onset date of April 18, 2019. (Id. at 24, R. 23).

At Step Two, the ALJ found that David suffered from the severe medically determinable impairment of dysfunction of major joints (knees). (Id.). The ALJ also determined that David had non-severe impairments of lumbar degenerative changes, laryngopharyngeal reflux, essential hypertension, a hiatal hernia, and moderate pulmonary obstruction. (Id. at 25, R. 24).

At Step Three, the ALJ found that David's impairments did not meet or medically equal the severity of one of the listed impairments in 20 C.F.R. § Pt. 404, Subpt. P, App. 1. (20 C.F.R. §§ 404.1520(d); 404.1525; and 404.1526). (Id.).

6

In evaluating David's impairments, the ALJ considered Listing 1.02 (dysfunction of a joint due to any cause). (Id.).

After Step Three but before Step Four, the ALJ found that David had the residual functional capacity ("RFC") to perform light work as defined in 20 CFR § 404.1567(b), with the following limitations: lift and carry 20 pounds occasionally and 10 pounds frequently; stand/walk six hours out of eight hours; sit six hours out of eight hours with no limit on push/pull or foot pedals; occasionally use ramps, stairs, ladders, ropes, or scaffolds; frequently balance; occasionally stoop, kneel, crouch, and crawl; and no manipulative, visual, communication, environmental, or mental limitations. (Dkt. 14-2 at 25-26, R. 24-25).

At Step Four, the ALJ determined that David is capable of performing his past relevant work as a crane operator, flagger, and forklift operator. (Id. at 30, R. 29). The ALJ, thus, concluded that David was not disabled. (Id. at 31, R. 30).

## IV. ANALYSIS

David argues that this matter should be remanded because the (1) ALJ's decision is based on cherry-picked evidence that overlooks his difficulties in functioning and fails to provide an accurate and logical bridge to support the critical findings and conclusions; (2) ALJ erred in assessing Plaintiff's subjective statements; (3) ALJ improperly substituted his lay opinion for those of the medical sources; (4) RFC is unsupported because it does not accommodate Plaintiff's medical conditions; and (5) the ultimate decision is unsupported because the hypotheticals to the vocational expert were incomplete and the Plaintiff should have been limited

to sedentary work and, thus, found disabled. (Dkt. 19 at 1-2). Beginning with an issue that is dispositive, the Court will address the arguments as necessary to resolve the appeal.

### A. Outdated State Agency Physicians' Opinions

David argues that it was error for the ALJ to find the state agency reviewing physicians' opinions persuasive because those opinions were outdated and incomplete. (Dkt. 16 at 17-19; Dkt. 18 at 10-12). Specifically, David contends that the record contained evidence of new, significant medical diagnoses and worsening conditions that changed the picture on his functional capabilities, such that the state agency reviewing physicians' opinions were rendered stale and, thus, it was improper for the ALJ to rely on them. (Id.).

The ALJ found that the prior administrative medical findings of the state agency reviewing consultants, J.V. Corcoran, M.D., and M. Brill, M.D., were persuasive to support the conclusion that David could perform a reduced range of light exertional work. (Dkt. 14-2 at 29, R. 28). The ALJ's consideration of these opinions is as follows:

> State Agency physicians, J.V. Corcoran, M.D. and M. Brill, M.D., opined that the claimant's severe physical impairment warranted functional limitations. They felt that the claimant was capable of performing work at the light level of exertion with additional postural limitations. They believed that the claimant could occasionally climb ramps, stairs, ladders, ropes, and scaffolds, balance, stoop, kneel, crouch, and crawl. (B2A; B4A). I find these opinions persuasive as they are supported by the significant clinical findings, significant treatment, and diagnostic imaging discussed above. (B1F:5-65; B1F:90; B9F:31, 58-60; B10F:111-146). The opinions are somewhat consistent with the opinion of Keith Flak, M.D., but are not consistent with the testimony of the claimant regarding his alleged level of limitation due to his severe physical

8

>impairment. However, the claimant's alleged level of limitation is not fully supported by his reports in records and other clinical findings that include full left knee flexion, good left knee stability to varus/valgus stress, no left knee effusion, a negative left muscle-tendon bursal examination, neurovascularly intact distally without swelling, normal extremity range of motion, normal extremity strength, normal sensation, normal motor function, and no focal deficits. (B9F:10, 28-29, 58-60; 10F:42-57).

(Dkt. 14-2 at 29, R. 28).

The Seventh Circuit has explained that "[a]n ALJ should not rely on an outdated assessment if later evidence containing new, significant medical diagnoses reasonably could have changed the reviewing physician's opinion." *Moreno v. Berryhill*, 882 F.3d 722, 728 (7th Cir. 2018), *as amended on reh'g* (Apr. 13, 2018) (citing *Stage v. Colvin*, 812 F.3d 1121, 1125 (7th Cir. 2016) (remanding where a later diagnostic report "changed the picture so much that the ALJ erred by continuing to rely on an outdated assessment") (additional citation omitted)). The Seventh Circuit has also "said repeatedly that an ALJ may not 'play[] doctor' and interpret 'new and potentially decisive medical evidence' without medical scrutiny." *McHenry v. Berryhill*, 911 F.3d 866, 871 (7th Cir. 2018) (quoting *Goins v. Colvin*, 764 F.3d 677, 680 (7th Cir. 2014) (ruling that the ALJ erred in failing to submit the claimant's first MRI in 11 years to medical scrutiny and in interpreting the results himself). "An ALJ may not conclude, without medical input, that a claimant's most recent MRI results are 'consistent' with the ALJ's conclusions about [his] impairments." *McHenry*, 911 F. 3d at 871 (quoting *Akin v. Berryhill,* 887 F.3d 314, 317-18 (7th Cir. 2018)).

9

At the time of the state agency physician review on reconsideration on December 19, 2019, Dr. Brill considered evidence of David's left knee impairment and x-ray imaging of his lumbar spine showing disc space narrowing at T11-12 and facet arthropathy. (Dkt. 14-3 at 21-22, R. 73-74). The x-ray imaging of David's spine was taken April 19, 2019. (Dkt. 14-7 at 123, R. 356). The radiologist noted that if there was further clinical concern, an MRI could be considered for further evaluation. (Id.). The record also included evidence that David had undergone a left total knee replacement for end-stage osteoarthritis on May 1, 2019. (Id. at 14, R. 247). Dr. Brill concluded that David could lift and carry 20 pounds occasionally[2], lift and carry 10 pounds frequently[3], stand and/or walk about six hours in a workday (with normal breaks), and sit about six hours in a workday, with additional postural limitations. (Dkt. 14-3 at 20-21, R. 72-73).

David contends that the state agency physicians' assessments were outdated based on new evidence submitted after Dr. Brill's review, including that he had: (1) new onset right knee pain resulting in a right total knee replacement, (2) another arthroscopic manipulation of his left knee, (3) an MRI of his lumbar spine dated February 8, 2020, (4) an x-ray of his thoracic spine dated February 26, 2020, (5) facet joint injections that did not resolve his back pain, and (6) a pulmonary function report, dated July 20, 2020, that showed moderate lung obstruction. (Dkt. 16 at 17-19).

---

[2] Cumulatively one-third or less of an eight-hour workday.
[3] Cumulatively more than one-third up to two-thirds of a workday.

On January 3, 2020, David reported to Dr. Carlo Belmar, his orthopedic surgeon, that he had severe right knee pain and explained that he had not worked in over a year because he was "unable to stand for any significant period of time." (Dkt. 14-7 at 249, R. 482). Because David had already tried therapeutic exercise, anti-inflammatory medication, and steroid injections for his right knee pain and end stage right knee osteoarthritis, Dr. Belmar agreed to perform a total right knee replacement. (Id. at 250, R. 483). David was also experiencing a left knee flexion contracture, so Dr. Belmar agreed to perform a left knee manipulation at the time of the right knee replacement. (Id.). On February 8, 2020, an MRI was taken of David's lumbar spine that showed a disc herniation at L1-2 causing mild to moderate left foraminal narrowing and a small disc herniation at L5-S1 that was possibly abutting the right S1 nerve root. (Dkt. 14-8 at 14-15, R. 527-28).

On February 12, 2020, Dr. Belmar performed a right total knee replacement and a left knee manipulation. (Id. at 142, R. 655). On May 8, 2020, David requested injections for ongoing back pain that was worse with bending, twisting, and walking, and better with rest, sitting, and changing positions. (Dkt. 14-7 at 274, R. 507). On July 20, 2020, he underwent pulmonary function testing due to shortness of breath that demonstrated "obstructive impairment consistent with moderate [chronic obstructive pulmonary disease] and/or asthma." (Dkt. 14-8 at 3, R. 516).

"Courts have found evidence following a state agency physician's review to be potentially decisive in situations where it reveals a new condition or reflects a severe worsening of a condition." *Shelia M. v. Saul*, No. 20 C 664, 2021 WL

1784775, at *6 (N.D. Ill. May 5, 2021). The Court must consider "whether the updated information was minor enough that the ALJ did not need to seek a second opinion." *Kemplen v. Saul*, 844 F. App'x 883, 887 (7th Cir. 2021), *as amended on reh'g in part* (June 21, 2021); *compare*, *Stage*, 812 F.3d at 1125 (Seventh Circuit held that a treating physician's "report, which diagnosed significant hip deformity, a restricted range of motion, and the need for a total left hip replacement, changed the picture so much that the ALJ erred by continuing to rely on an outdated assessment by a non-examining physician and by evaluating himself the significance of [the treating physician's] report.").

In the present case, David underwent a right total knee replacement, and the question is whether this surgery is properly deemed a minor evidentiary development for an individual who just recently had his left knee replaced.[4] The updated evidence also showed that David had significant new diagnoses including disc herniations in his lumbar spine and mild to moderate foraminal stenosis, both shown on an updated MRI, and a moderate lung impairment. (Dkt. 14-8 at 3, 14-15, R. 516, 527-28). Consistent with those diagnoses, David reported pain and shortness of breath particularly when he was on his feet and exerting himself. (Dkt. 14-7 at 274, R. 507).

---

[4] On a related note, Plaintiff argues that the ALJ failed to adequately address his obesity. (Dkt. 16 at 21-22). The record generally shows that David's weight increased during the period under review. On May 1, 2019, his provider recorded that he had a body mass index ("BMI") of 28.4. On January 3, 2020, David's BMI had increased to 30.4. In *Martinez v. Astrue*, 630 F.3d 693, 698-99 (7th Cir. 2011), the court explained that a BMI of over 30 is generally considered obese and held that the ALJ's "gravest error" was his failure to consider the combined effect of obesity and a bad knee. Here, the ALJ did not discuss David's weight and the consultants did not consider the later evidence showing that David's weight increased along with his bilateral knee problems.

Nevertheless, the Commissioner relies on *Keys* to argue that David's new diagnoses and medical evidence merely demonstrate mild degenerative changes in the back and do not support any new or greater functional limitations in this case. David contends in response that unlike the two spinal MRIs that showed new mild and minimal findings in *Keys*, here the objective medical evidence showed "(1) new right knee abnormalities resulting in total knee replacement, (2) worsening in Plaintiff's condition based on another arthroscopic manipulation of the left knee, and (3) lumbar imaging showing disc herniations, mild to moderate foraminal narrowing, and possible involvement of a nerve root." (Dkt. 18 at 11). Additionally, Plaintiff maintains that these new and worsening conditions should have required a limitation to sedentary work, greater stooping restrictions, and allowances for time off task and absences. (Dkt. 18 at 13). Plaintiff has sufficiently distinguished the present case from *Keys*.

The SSA's guidance explains that individuals may subjectively experience pain differently even with the same objective severity demonstrated by diagnostic imaging. *See* Social Security Ruling 16-3p (S.S.A. Oct. 25, 2017), 2017 WL 5180304, at *4. Accordingly, other evidence may be so overwhelmingly unsupportive of additional functional limitations that a failure to submit imaging to medical scrutiny is not prejudicial. *See Kemplen*, 844 F. App'x at 887 (analyzing whether the updated imaging was "corroborated by other medical evidence"). Here, the ALJ explained that during follow-up visits with David's treating orthopedists, he reported "at least some improvement," he denied that his pain was causing any

13

impairment with his quality of life or ability to perform activities of daily living, and he was doing well with no problems. (Dkt. 14-2 at 28-29, R. 27-28). But the Seventh Circuit has explained that "[t]here can be a great distance between a patient who responds to treatment and one who is able to enter the workforce . . . ." *Scott v. Astrue*, 647 F.3d 734, 739 (7th Cir. 2011). For instance, on February 25, 2020, David reportedly looked "great," and he was "very happy that both knees [were] making excellent progress[.]" (Dkt. 14-7 at 257, R. 490). However, that same day, he also requested that his provider issue him a handicap placard. (Id. at 258, R. 491). On June 1, 2020, David reported that his pain had averaged a five out of ten over the past week. (Id. at 222, R. 455). He also reported that his pain was aggravated by walking and alleviated with rest and sitting. (Id.).

David testified at the hearing on July 28, 2020 that he could not work because he had both knees replaced and he had developed severe, constant back pain. (Dkt. 14-2 at 40, R. 39). He stated that his back pain had been an eight out of ten before he received a cortisone injection that initially reduced his pain level to a two or three out of ten, but that his pain level had gradually increased over about two months following the injection treatment. (Id. at 41, R. 40). David estimated that he could walk for 30 minutes, "10 minutes to stand [was] about all [he could] do," and he could lift 20 pounds, but he could only carry 5 pounds "across the room." (Id. at 44, R. 43).

On the Court's review, David's subjective complaints of new and worsening back and knee pain were likely supported by the objective medical evidence in the

14

record, none of which the state agency reviewing physicians had the benefit of reviewing. The record is not so minor to excuse the ALJ's failure to submit the updated record—including new objective testing and resulting diagnoses—to further medical scrutiny.

This issue is especially important in this case, because if David were limited to sedentary exertional work[5] or even a range of light exertional work that precluded his past relevant work, David may be found disabled under the Grids. *See* 20 C.F.R. § Pt. 404, Subpt. P., App. 2, Rules 201.06 and 202.06. David has demonstrated that further consideration of his alleged limitations—based on the complete record—is material to his disability claim. Accordingly, remand is necessary for further consideration of David's RFC based on the complete record of his combined impairments.

### B. Other Arguments

Having found remand necessary for further consideration of the medical evidence, the Court declines to analyze David's remaining arguments.

### V.   CONCLUSION

For the reasons detailed herein, the Court **REVERSES** the ALJ's decision denying the Plaintiff benefits and **REMANDS** this matter for further proceedings

---

[5] "The regulations define sedentary work as involving lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although sitting is involved, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." Social Security Ruling 83-10 (S.S.A. 1983), 1983 WL 31251, at *5.

pursuant to 42 U.S.C. § 405(g) (sentence four). Final judgment will issue accordingly.

   So ORDERED.

Date: 9/26/2022

*Doris L. Pryor*
Doris L. Pryor
United States Magistrate Judge
Southern District of Indiana

Distribution:

Service will be made electronically
on all ECF-registered counsel of record via
email generated by the Court's ECF system.